The firm of S. A. Jewett & Co. were engaged in the lumber business in Wisconsin quite extensively, the business amounting, as is said, in the course of a year to about one hundred thousand dollars. They had become embarrassed, and a petition in bankruptcy was filed against them. Their creditors insisted that their property should be administered by the court under the bankrupt law for the payment of their debts. There was no way in which this could be done except by a decree of bankruptcy against the partners; and it seems to me clear, that the proper forum in which the decree should be rendered was that which existed in the district where they were transacting business, namely, in the Western district of Wisconsin. There was no other way by which these partnership assets could be reached and administered in the bankrupt court, unless S. A. Jewett. as a member of the firm of which E. D. and G. K. Jewett were also members. was called, in some form, into the district court of Massachusetts, and the assets of the firm of S. A. Jewett & Co., administered there, namely. the residuary interest which E. D. and G. K. Jewett had in them after the settlement of the claims against the firm of S. A. Jewett & Co., because I assume that the only interest which E. D. and George K. Jewett, or their assignee had, either as representing the firm of Jewett & Pitcher, or themselves individually, was the residuary interest which they or either might have in the assets of S. A. Jewett & Co., after the payment of the debts of that firm.

## Case No. 7,308.

In re JEWETT et al.

[1 McA. Pat. Cas. 259.]

Circuit Court, District of Columbia. June. 1853.

P. H. Watson, for appellant.

MORSELL, Circuit Judge. Appeal from the decision of the commissioner of patents refusing to grant a patent for alleged improvements in stoves, which consisted in attaching sliding-doors to stoves or grates instead of the more common stove-door opening on a hinge. The appellants claim that their improvement involves a combination of three things. The first is the fire-place or furnace; the second is a horizontally sliding-door to close the front of the fire-place; and the third is a recess in one or both of the door-jambs, completely separated from the fire-place, so as to prevent smoke and flame from circulating through it; which recess is adapted to the reception of the door, and the door is fitted to slide into it, and when in, will be concealed from view on the outside and protected from the smoke and flame on the inside, so that when within the recess the outside of the doors will not be liable to become smoked; consequently, when drawn out, no part of the surface exposed to view will be rendered offensive by smoke and soot. In stating the usefulness and advantages of their improvements, they say: "This construction and arrangement of the parts confines the soot to the inner side of the door and keeps that always concealed from view and out of the way, so as to avoid soiling the garments of those who approach the doors to open or shut them; while the sliding-doors and recesses possess these advantages, that they also avoid the rush of smoke and flame into the apartment that attends the sudden opening of hinged doors."

The commissioner in his report states that the invention was sufficiently described in the specification, illustrated in the drawings, and shown in the models. It does not appear to have been a case of interference or opposition, but to have been decided on the ground of want of novelty, and for that reason rejected. The report states that on the 7th of July, 1851, the application was examined and rejected on that ground, and a reference was given for an example of a sliding-door to the rejected application of C. Hitzelberger. On the 9th of the same month a reconsideration of this decision was requested, for the reason that the reference given was to a sliding-door for a dwelling-house or stone front, which ought not to bar the applicant from receiving a patent for a sliding-door as applied, because the results in the latter were widely different. On the 11th of the same month the application was again rejected, and a new reference was given to the rejected application of W. C. Hibbard. It was contended that the devices of the two are not analogous, because of the radical difference of function which they are appointed, respectively, to perform; from

which decision this appeal was taken. The substance of the reasons of appeal are correctly stated in the report.

On the day and place appointed for hearing the appeal the appellants appeared by their counsel, and an examiner on the part of the office, who laid before the judge the grounds of the commissioner's decision in writing, with the original papers and the evidence in the cause, as already in part alluded to. The report further states "that in one of the early modifications of the stove which still bears his name Doctor Franklin introduced vertical sliding-doors for regulating the draft and 'for security against the falling of brands or coals out upon the floor of the room," &c. Again, "that on the 22d of April, 1835, a patent was granted to E. Ingall, in which he claims as his invention the application of horizontally sliding-doors to stoves and grates of all descriptions." These latter references having been made for the first time at the trial of the appeal before the judge, were objected to by the appellants upon the ground of surprise. And it has been urged in the argument that, if an opportunity had been afforded them, they could have shown a radical and substantial difference between their improvement and that contained in Ingall's patent, in which latter the open door is, and only can be, partially concealed, as the plate behind which it is pushed is only about half its own width. In the feature of concealing the door this stove, therefore, furnishes no answer to the appellants' claim. Further, the recess to receive the door and insulate it from the fire does not appear in Ingall's stove; consequently his stove only embraces two of the three elements of the appellants' combination —the sliding-door and the fire-place, but not the recess for concealing and protecting the door; this nowhere appears in connection with the sliding-door and fire-place prior to the invention of the appellants. They claim the right to have had an opportunity also afforded them of so amending or altering their specification as to embrace only that part of the invention or discovery not within the patent of Ingall.

The law under which the right is claimed is the seventh section of the act of 1836, which, after limiting and specifying the three instances to which the commissioner's examination is confined, says, in the event of the existence of either of the conditions, that he shall notify the applicant thereof, giving him briefly such information and references as may be useful in judging of the propriety of renewing his application, or of altering his specification to embrace only that part of the invention or discovery which is new. If these references are to be considered by the judge as grounds on which his opinion in this appeal is to be based, then the rule of law above stated and relied on by the appellants is certainly applicable, more especially as it appears that the ref-

erences originally referred to as the grounds of the commissioner's decision, and from which this appeal was taken, so far from now being confided in, are virtually abandoned.

I have therefore thought proper, and do hereby decide, that the said decision of the commissioner of patents be, and the same is hereby, reversed for the purposes aforesaid. and the commissioner is hereby directed to proceed in the said case accordingly.